*I.*

In the Matter of the Application of EDWARD M. GROUT, as Comp-
troller of the City of New York, Respondent, for a Warrant for
the Arrest and Committal to Jail of JOSEPH WILLIAMS, Appel-
lant, for Refusal to Answer Pertinent Questions Concerning a
Claim against the City of New York.

*Examination by the comptroller of a claimant against the city of New York — a*
*corporation is a person within the meaning of the charter — the right under the*
*charter must be exercised before suit brought — thereafter it must be exercised under*
*the Code of Civil Procedure — the examination must be as to matters pertinent to*
*the claim — section 856 of the Code of Civil Procedure is unconstitutional —*
*its constitutionality is determined by what may be, not by what has been, done*
*thereunder.*

A corporation is a person within the meaning of section 149 of the Greater New
York revised charter (Laws of 1901, chap. 466), which provides that the comp-
troller of the city of New York "may require any *person* presenting for settle-
ment an account or claim, for any cause whatever, against the corporation, to
be sworn before him touching such account or claim, and when so sworn, to
answer orally as to any facts relative to the justness of such account or claim."
The right of examination conferred on the comptroller by such section is not
limited to any one officer of the corporation presenting the claim, nor does the
exercise of the right as to one officer of the corporation deprive the comptroller
of the power to exercise the right as to other officers of the corporation.
Such right of examination must be exercised by the comptroller before the cor-
poration has commenced an action against the city on the claim presented by
it.   If, after the commencement of the action, the comptroller desires any
information from the corporation with respect to the claim, he must proceed
in accordance with the provisions of the Code of Civil Procedure.
The power conferred on the comptroller by said section 149 is not unlimited with
respect to the questions which he may compel the claimant to answer, but is
limited to questions which are competent, material and relevant on the subject
of the justness of the claim.
Where it appears that the claim in controversy is on a *quantum meruit* for elec-
tric light furnished by the claimant corporation to the city, and that the only
matter in dispute is the fair or market value of the light furnished, the comp-
troller is not entitled, under section 149 of the revised charter, to examine the
officers of the claimant corporation respecting the circumstances attending
the formation of such corporation, and as to the statements then prepared
concerning the actual value of its plant exclusive of its franchise privileges.
Section 856 of the Code of Civil Procedure, which authorizes any judge, on
proof by affidavit that a person attending pursuant to a subpœna refuses with-
out reasonable cause to answer legal and pertinent questions, to commit, by
warrant, the offender to jail, is unconstitutional, in that, as it does not provide

for notice to the witness or afford him an opportunity to be heard, it operates to deprive him of his liberty without due process of law.

The fact that a witness committed to jail pursuant to such section was given notice of the proceeding and an opportunity to be heard, or that the questions involved have been fairly decided, does not render his commitment legal, as the constitutionality of the statute is to be tested, not by what has been done but what may be done under it.

APPEAL by Joseph Williams from an order made by a justice of the Supreme Court at the city of Brooklyn, Kings county, and entered in the office of the clerk of the county of Kings on the 20th day of February, 1905, said order having been substituted for an order made on the 26th day of January, 1905, directing the sheriff of the county of New York to commit the appellant to jail until he should submit to answer certain questions.

*William N. Dykman* [*Samuel A. Beardsley* and *Henry J. Hemmens* with him on the brief], for the appellant.

*Henry Yonge*, for the respondent.

RICH, J.:

On May 12, 1903, the New York Edison Company, a domestic corporation, filed with the respondent a claim against the city of New York for $187,806.58 for electric light furnished to the various departments of the city from January 1, 1903, to and including April 30, 1903, and from time to time thereafter filed similar claims covering a period down to March 15, 1904. These claims were not audited or paid by the comptroller, and on December 23, 1904, an action was commenced in the Supreme Court for their recovery. The city appeared in the action by its corporation counsel, and the action was pending and undetermined at the time the proceeding was commenced for the examination of the appellant, resulting in the order appealed from.

Prior to the time of furnishing this light the company had filed sealed proposals pursuant to an advertisement for furnishing, operating and maintaining electric lamps for lighting the streets, parks and public buildings in the boroughs of Manhattan and The Bronx, preparatory to contracts therefor with the successful bidders, and its claims were based in conformity with the prices for the service as stated in such proposals. These proposals had been rejected, but

SECOND DEPARTMENT, MAY, 1905.                    [Vol. 105.

the conduct of the city officials had been such that the company
claimed and now contends that notwithstanding such rejection the
electric light for which it sought compensation was furnished under
a contract therefor, while the position of the comptroller is that
there was no contract and the company must recover, therefore, on
a *quantum meruit.*

In appears that in 1904 the city entered into contracts for light-
ing at substantially the same units of price as had been charged by
the company for the light furnished by it in 1903, and in view of
these contracts the comptroller had under advisement an adjustment
and settlement of the outstanding claims for the light furnished in
1903.    While the matter was under consideration, and before he
had reached a conclusion, William Randolph Hearst commenced an
action in the Supreme Court against the mayor, comptroller and
other officers of the city of New York, its purpose being to pre-
vent a settlement of these bills at the amounts claimed.    In that
action the comptroller served an amended answer, in which he
alleged that he had abandoned the proposed settlement and had
determined to resist such bills to the utmost.    The comptroller and
other officers of the city were restrained by injunction, during the
pendency of the action, from auditing, allowing or paying any of
the bills for electric lighting furnished by said company between
January 1, 1903, and March 1, 1904.    On January 6, 1905, Joseph
Williams, the assistant secretary and assistant treasurer of said New
York Edison Company, was served with a subpœna, issued by the
comptroller under the provisions of section 149 of the New York
city revised charter (Laws of 1901, chap. 466), requiring his appear-
ance before that officer to be sworn " touching and concerning the
claims presented against The City of New York' by The New York
Edison Company, for electric lighting, and then and there to
answer all questions as to facts, relative to the justness of such
claims."    Williams obeyed the subpœna so far as attendance and
being sworn as a witness were concerned, but during the examina-
tion he was asked the following questions, among others :  " Q.
Were you familiar with the circumstances and the situation lead-
ing up to and resulting in the formation of the New York Edison
Company?    Q.  Did you at the time of the formation of the new
company prepare any statements or take part in the preparation

of any statements as to the actual value of the plants irrespective of the franchises or monopoly privileges? Q. As Assistant Secretary and Treasurer are you the active man in the duties of Treasurer? Q. As Assistant Secretary are you the active man in the duties of that office? Q. As Assistant Secretary and Treasurer do you attend the meetings of the Board of Directors? Q. Do you keep the minutes of such meetings? Q. Who does keep the minutes of such meetings? Q. During the time that you have been connected with the New York Edison Company have you ever seen any statement, estimate or a paper relating to the cost of producing and distributing electric light per kilowatt hour reduced to a basis of kilowatt hour? Q. Did you take part in the preparation of the estimates or other data that resulted in the bid for the electric lighting in the Boroughs of Manhattan and The Bronx for the year 1903? Q. Do you know whether or not the element of the cost of production to the company was taken into consideration? Q. Do you know whether or not the element of maintenance was taken into consideration? Q. Do you know whether or not the question as to whether this was a fair market price was taken into consideration? Q. Do you know whether or not these matters were taken into consideration at all? Q. Do you know whether or not there had been any meeting between any officer or agent of your corporation and any officer or agent of any other corporation supplying electricity in the Boroughs of Manhattan or The Bronx? Q. Do you know whether by any agreement between the corporations there was but one bid made for a given area? Q. Are there any books that you are aware of in the New York Edison Company which show the cost of production? Q. Do you know whether there are any books kept by your company which separate the items, which in any way divide the expense of the company under groups or heads, like maintenance account, capital account, distribution account, or in any manner of that kind? Q. Is there any engineer's report to the President or Board of Directors, or any other officer, or to yourself, concerning the cost of production? Q. Do you know what the cost of production is? "

These questions the witness declined to answer, under the advice of counsel, stating his reasons and objections to each question as asked, which were taken and entered in the minutes as follows:

" *First*. On the ground that the Comptroller had rejected the claims concerning which he had subpœnaed the witness to testify and he was without either authority or jurisdiction herein and had no power either to subpœna or examine witnesses in regard to the justness of the alleged rejected claims.

" *Second*. On the ground that the Comptroller had no jurisdiction or authority under the Charter of Greater New York, and particularly under section 149 thereof or under the Code of Civil Procedure or under any law or statute of the State of New York to inquire into any matter concerning the capital stock of the New York Edison Company or its bonded indebtedness or the cost to it of generating and distributing electricity furnished to The City of New York for lighting or power purposes or to maintain the system over, through or by which it distributes electricity to The City of New York for lighting or power purposes.

" *Third*. Also on the ground that the intent and purposes of the examination and of the questions propounded to the witness are in violation of the constitutional rights and privileges of the New York Edison Company and are inquisitorial in their nature and are not within the intent or meaning of section 149 of the Charter of Greater New York or of any law or statute of The State of New York.

" *Fourth*. Also on the ground that the witness should not be compelled to disclose the private papers and documents and private business matters of The New York Edison Company.

" *Fifth*. Also on the ground that the claim is founded on a contract made pursuant to public letting, and, therefore, the Comptroller has no jurisdiction to examine into the same, on the ground that it is not subject to special audit or investigation, as the prices are fixed by contract and the only subject of inquiry is as to the accuracy and correctness of the account rendered.

" *Sixth*. Also on the ground that litigation has actually been instituted by the New York Edison Company against The City of New York for the recovery of the amount due and other litigation is threatened and the Court is the proper tribunal for such investigation.

" *Seventh*. Also on the ground that the questions propounded are immaterial, incompetent and irrelevant."

The comptroller thereupon procured from Mr. Justice MAREAN an order requiring the witness to show cause why he should not be committed to jail until he submitted to answer said questions, upon the return of which the order appealed from was granted.

The reasons presented by the witness to the comptroller, and stated as the grounds of his refusal to answer the questions, form the foundation upon which counsel for the appellant bases his argument in this court, with the additional question as to the constitutionality of section 856 of the Code of Civil Procedure, under the provisions of which the order was granted, and require a construction of section 149 of the revised charter of Greater New York, including a determination of the powers of the comptroller thereunder and the extent of the examination authorized.

Section 149, so far as it applies to the questions under consideration, provides as follows : " All payments by or on behalf of the corporation, except as otherwise specially provided, shall be made through the proper disbursing officer of the department of finance, on vouchers to be filed in said department, by means of warrants drawn on the chamberlain by the comptroller, and countersigned by the mayor. The comptroller may require any person presenting for settlement an account or claim, for any cause whatever, against the corporation, to be sworn before him touching such account or claim, and when so sworn, to answer orally as to any facts relative to the justness of such account or claim. * * * He shall settle and adjust all claims in favor of or against the corporation, and all accounts in which the corporation is concerned as debtor or creditor." By the provisions of section 261 of the revised charter, an action is properly commenced against the city upon a claim or account, at any time after the expiration of thirty days from the time of its presentation to the comptroller, followed by his neglect or refusal, for that length of time after presentation, to adjust or pay it.

Certain well-defined and established principles of law, requiring no citation of authorities, are to be observed in the construction of statutes. The intention of the lawmakers must be sought; when ascertained, it should be followed, with reason and discretion, although such construction may seem contrary to the letter of the statute. The lawmakers cannot always foresee all the possible appli-

SECOND DEPARTMENT, MAY, 1905.                [Vol. 105.

cations of the general language they use, and it frequently becomes the duty of courts, in construing statutes, to limit their operation so that they shall not produce absurd, unjust or inconvenient results, not contemplated or intended. A case may be within the letter of the law, and yet not within the intent of the lawmakers, and in such a case a limitation or exception must be implied. In determining the intention of the Legislature, existing conditions and laws and the necessity for making the statute may be considered. Statutes *in pari materia* should be construed together, and statutes in derogation of the common law must be strictly construed.

The examination by the comptroller of a person presenting a claim against the city of New York was first authorized in the charter of 1873, by substantially the same language as is now contained in section 149. (Laws of 1873, chap. 335, §§ 29, 31.) The reason for conferring that power seems to have been the conditions existing in the city of New York, then under the control of the so-called "Tweed Ring," resulting in the looting of the city treasury by fictitious, illegal and grossly excessive claims, which were audited and allowed by the heads of different departments upon whose audit they were paid, and the consequent need of fixing and placing the responsibility for the adjustment and settlement of claims upon a single officer and vesting him with the power and means of determining their justness through the power to subpoena and examine the claimant.

I am unable to concur in the contention of counsel for the appellant that the comptroller was without power or authority under the provisions of section 149 to examine the appellant, upon proper subjects and within proper limits, as to the claim of the New York Edison Company of which he was an officer. Due consideration of the conditions existing at the time of its passage, imperatively requiring its enactment, and its wording, eliminate from my mind all doubt but that it was the intent of the Legislature to include corporations among the *persons presenting claims* who might, under its provisions, be required by the comptroller to appear before him and submit to an examination relative to the justness of their filed claims, and the right of examination so given is not limited to any one officer of the corporation. The examination of any of its officers having, or supposed to have, within his knowledge or at his

command, the information sought, is authorized by said section 149, nor does the exercise of the power as to one officer deprive the comptroller of the right to examine other officers of the corporation claimant upon the subject-matter of the claim. Under no other construction can the purposes and benefits of the section be secured to the city. Long prior to and at the time of the enactment of the charter of 1873 the Code of Procedure had, by section 158, provided for a bill of particulars of the account of an adversary, and by sections 390 and 391 for the examination of a party to a pending action upon or before its trial, under which the courts had held that such an examination was an absolute right and might be had either before or after issue joined (*Cook* v. *Bidwell*, 29 How. Pr. 483; *Fullerton* v. *Gaylord*, 7 Robt. 552), and even before the service of the complaint (*Duffy* v. *Lynch*, 36 How. Pr. 509); that the right of examination extended to all matters pertinent to the issue if formed (*Cook* v. *Bidwell*, *supra*), and if issue was not joined, the range of the inquiry was within the discretion of the judge before whom the examination was being taken (*Plato* v. *Kelly*, 16 Abb. Pr. 188), and that if the witness refused to answer a pertinent or proper question, the judge should commit him for contempt. Such of the provisions of these sections of the Code of Procedure as survived the adoption of the Code of Civil Procedure were incorporated and continued therein (§§ 531, 870, 872, 873). At the time of the enactment of the charter of 1873, containing practically the same language as that portion of the provisions of section 149 of the present charter now under consideration, it was within the power of the city of New York, proceeding under the sections of the Code of Procedure cited, to acquire after the commencement of an action against it all the information desired from a plaintiff, on proper and pertinent matters involved in the issues joined or apprehended from the commencement of the action, and the passage of the charter provisions conferring upon the comptroller the right of examination referred to was not necessary or required for that purpose, and excludes the contention of the comptroller, and the conclusion reached by Mr. Justice MAREAN, that the right of examination afforded by section 149 of the present charter survives the commencement of an action based on the claim as to which information is thus sought, or can thereafter be legally exercised.

SECOND DEPARTMENT, MAY, 1905.            [Vol. 105.

This conclusion seems to have been (inferentially at least) reached by the General Term of the Court of Common Pleas in *Meyer* v. *Mayor, etc., of New York* (12 N. Y. St. Repr. 674) and by Mr. Justice PATTERSON, sitting at Special Term of the Supreme Court in *Frankel* v. *Mayor, etc., of New York* (18 N. Y. St. Repr. 241).

I think that the legislative intent was solely to vest in the comptroller the right and power to compel the attendance of and to examine a claimant upon such matters connected with or pertinent to the justness of his claim as would enable such official to intelligently determine whether to adjust, settle and pay it, thus saving the expense of litigation to the city, or, in the event of doubt, after ascertaining such facts as to its legality, excessiveness, inability to settle or compromise for a reasonable amount, or other sufficient reason, in his judgment, to reject it, and thus compel the claimant to commence his action, and such examination if desired must be had before the commencement of action, which must be delayed for thirty days after the presentation of the claim (Revised Greater N. Y. Charter, § 261), at the expiration of which time, the comptroller having neglected or refused to make an adjustment of the claim, the claimant has the right to commence his action for its recovery, and with its commencement the right of examination of the claimant by the comptroller under the provisions of section 149 of the revised charter ends, and information thereafter desired must be sought under the provisions of the Code of Civil Procedure. (*supra*).

Nor can I concur in the contention of the learned counsel for the respondent that the power of the comptroller under section 149 of the revised charter, as to the questions he may ask and compel the claimant to answer, is unlimited and without restriction. When, as in this case, the comptroller seeks the aid of the court to punish a claimant for not answering questions, he must make it appear that the examination authorized by the section is necessary to enable him to determine in good faith whether or not he will adjust and settle the claim presented, that the questions asked are pertinent, and are confined to the justness of the claim. Considered from this standpoint they should be competent, material and relevant. In these particulars the power of the comptroller is limited by the purposes and objects of

the examination as expressly defined by and stated in the section. Nothing short of the establishment of such facts by convincing and satisfactory proof, or inferences properly deducible therefrom, should be accepted by the court as furnishing a sufficient and adequate reason for its action in enforcing answers by the harsh and extreme punishment of imprisonment. It appears that the information sought to be obtained by the examination of the witness Williams as an officer of the corporation claimant, was not desired for the purposes contemplated by section 149 of the revised charter, for the comptroller had, before he required the witness to appear and testify, rejected the claims, and had declared that he had absolutely abandoned all idea of settlement and determined to resist the claims to the utmost, and within ten days after such declaration the company had commenced action to compel payment of these claims. The comptroller had retained possession of the claim first filed from May 13, 1903, to January 6, 1905, and of the claim last filed almost if not quite nine months after its presentation, without any attempt or effort to avail himself of an examination as to their justness, which he could have enforced at any time down to December 23, 1904, the time when the action was commenced.

I do not overlook the contention of counsel that the comptroller has power to adjust a claim by way of confession of judgment, continuing during the pendency of the action, from which he argues the possession of authority under the provisions of section 149 of the revised charter to acquire information tending to aid him in arriving at an intelligent and proper conclusion as to the advisability of the exercise of such power.

The answer to this contention is, *first*, that since the amendment to section 255 of the original charter of Greater New York* by chapter 284 of the Laws of 1900, the comptroller does not possess the power to confess judgment in an action against the city. By that amendment, which was re-enacted in and amended by the revised charter, his power in respect to confessing judgment in a pending action is limited to a previous written approval of the corporation counsel, and in the action brought by the New York Edison Company, it appears that the previous written approval of the mayor is

---

* Laws of 1897, chap. 378.— [REP.

also made a condition precedent to such action by the corporation counsel. *Second,* the record discloses no evidence of, nor does the comptroller make any claim that he has, or had at the time of the examination of Williams, any intention of adjusting in any manner, or settling or paying the claims on which the action is founded, or that he seeks the evidence for that purpose. His verified answer in the Hearst action establishes that he does not; but even if he did, he would be limited in his right to examine the claimant by the provisions of the Code of Civil Procedure. The examination authorized by section 149 of the revised charter is restricted by the provisions of the section to matters relating to and tending to establish the justness of the claim presented. Conceding the contention of the comptroller that the claim of the Edison Company is not based upon a contract, in which the compensation for the electricity has been agreed upon, the examination of the appellant was restricted to matters connected with the actual furnishing of the light and its fair value. I do not understand any claim to be made by the comptroller that the light included in the claims was not actually furnished, which further restricts the question to be considered by us on this branch of the case to the determination of whether the evidence sought by the questions asked the witness would aid the comptroller in judging of the fair or market value of the light so furnished. After careful examination I reach the conclusion that it would not, and that section 149 does not warrant or authorize an inquiry as to many of the matters embraced within the questions asked of the witness. Of this character are the questions as to the circumstances resulting in the formation of the New York Edison Company, and the statements then prepared as to the actual value of the plant irrespective of franchise privileges. These questions are inquisitorial in their nature, and require answers disclosing the private business affairs of the company; they relate to matters which, on such examination, the comptroller was not entitled to be made conversant with, and were not contemplated by and are not within the intent or meaning of section 149. The fair inference is deducible from the facts shown by the record that the evidence sought was desired for purposes not within the contemplation of the section under which it was attempted to be procured, and does not warrant this court in sustaining the order directing the imprison-

ment of the witness until such time as he answers the questions asked him by the comptroller.

The provisions of section 856 of the Code of Civil Procedure which authorize any judge, upon proof by affidavit, that a person subpœnaed and attending before the comptroller refuses, without reasonable cause, to answer on such examination legal and pertinent questions, to by warrant commit the offender to jail, there to remain until he submits to answer such questions, are unconstitutional, in that they deprive a citizen of his liberty without due process of law. (U. S. Const. 14th amendt. § 1; State Const. art. 1, § 6.) Assuming them to apply to this case, they authorize a judge, in any part of the State, to summarily determine on affidavits of the moving party, and without notice to the witness proceeded against or opportunity to be heard, that the questions asked are legal and pertinent, and that the refusal of the witness to answer is without reasonable cause, which determination must precede, and constitutes the justification for, the order of imprisonment. This is an arbitrary and direct invasion of the constitutional rights of a citizen in all cases where, as in this, the alleged offense was not committed in the presence of the judge making the order and determining the questions upon which the power to grant it is dependent. Such power cannot constitutionally be conferred upon a judge of any court. The Federal courts and nearly all State courts have for many years united in so declaring, and the Court of Appeals, as early as 1878, in *Stuart* v. *Palmer* (74 N. Y. 183), declared that a hearing or an opportunity to be heard, in which the citizen may defend, enforce and protect his rights, is absolutely essential to constitute due process of law; which principle has since been followed by all our courts, and is now so firmly established as the law of this State as to be beyond controversy. So carefully have the courts guarded this constitutional and sacred right of the citizen, that statutes omitting this required essential have uniformly been condemned, even where it appeared, as it does in this case, that the party proceeded against was permitted, through the courtesy of the court, to have and did have notice of the proceeding and opportunity to be heard. It is not enough that a person may by chance have notice, or that he may as a matter of favor or courtesy have a hearing; the law itself to be constitutional must require notice and

give a right to a hearing.   It matters not upon the question of the constitutionalty of such law that the questions involved have been fairly decided.   The essential validity of the law is to be tested, not by what has been done under it, but by what may by its authority be done.   (*Stuart* v. *Palmer, supra; Gilman* v. *Tucker,* 128 N. Y. 190, 200 ; *Coxe* v. *State,* 144 id. 396, 408 ; *Colon* v. *Lisk* 153 id. 188, 194.)

The order appealed from should be reversed, with costs.

WOODWARD, JENKS and MILLER, JJ., concurred; HIRSCHBERG, P. J., concurred in the result.

Order reversed, with ten dollars costs and disbursements, and motion denied, with costs.