In the Matter of the Application of CARRIE B. DEPUE, Appellant, for a Writ of Habeas Corpus.

HYMAN SONN et al., Respondents.

1. CONTEMPT — WHEN APPELLATE DIVISION HAS NO POWER TO REVERSE AS A MATTER OF LAW ORDER OF COUNTY JUDGE DISCHARGING RELATOR UPON HEARING OF WRIT OF HABEAS CORPUS. Where, upon the hearing of a writ of habeas corpus to procure the discharge of a person committed for contempt in failing to obey an order to appear before a referee to testify as a witness in supplementary proceedings, the county judge, before whom the writ was made returnable, discharged the relator from custody, the Appellate Division has no power to reverse the order of the county judge "as a matter of law and not as a matter of discretion" unless all the jurisdictional facts are admitted or conclusively established; and where such facts are not traversed or denied, and determined in favor of the relator by the county judge, the Appellate Division has no power to disturb his conclusions upon questions of law only, if there is any evidence to support his findings, or any view of the facts that required or justified him in discharging the relator from custody.

2. WITNESSES — ATTENDANCE IN SUPPLEMENTARY PROCEEDINGS COMPELLED ONLY BY SUBPŒNA. An order punishing a witness for contempt in failing to appear before the referee, in pursuance of an order, and testify in proceedings supplementary to execution is void; the attendance of witnesses in such proceedings can be enforced only by the due service of the process of subpœna as upon the trial of an action.

3. EVIDENCE. Facts not traversed or denied, alleged in a petition for a writ of habeas corpus instituted to procure relator's discharge from imprisonment under an order adjudging her in contempt, even if not admitted, constitute evidence upon the hearing of the writ, and if they show that she was not guilty of contempt she is entitled to be discharged.

4. WHEN WITNESS NOT SUBJECT TO FINE TO INDEMNIFY JUDGMENT CREDITOR. An order adjudging a person guilty of contempt for failing to obey an order to appear and testify before a referee in supplementary proceedings, imposing as a fine the amount of the judgment sought to be recovered and directing it to be paid to the creditor, is without power, where the creditor may maintain an action for damages for failure to obey any process issued with jurisdiction. (Code Civ. Pro. §§ 852, 853, 854, 2284.)

5. INDEFINITE MANDATE OF COMMITTAL. An order committing a person for contempt in failing to appear as a witness in supplementary proceedings on a day named or on other days and times not named does not sufficiently set forth the particular circumstances of the offense (Code Civ. Pro. § 11) and is too indefinite to authorize arrest and incarceration.

6. WITNESS MUST BE PERSONALLY SERVED WITH ORDER AND TENDERED LEGAL FEES. A third person ordered to testify as a witness in supplementary proceedings, who is not personally served with the order and tendered his legal fees, cannot be punished for contempt in failing to obey it.

*Matter of Depue*, 108 App. Div. 58, reversed.

(Argued February 27, 1906; decided April 24, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered October 27, 1905, which reversed an order of the Broome County Court directing that the petitioner be discharged from custody.

The facts, so far as material, are stated in the opinion.

*H. D. Hinman* for appellant. Neither the order of July 27, 1901, directing petitioner to attend before the referee on August eighth, nor the show cause order of December 14, 1901, having been personally served on petitioner, she was not guilty of contempt, and the county judge acquired no jurisdiction. (Code Civ. Pro. § 802; *Tebo* v. *Baker*, 77 N. Y. 33; *McCauley* v. *Palmer*, 40 Hun, 38; *Pittsfield Nat. Bank* v. *Bayne*, 137 N. Y. 557; *Loop* v. *Gould*, 17 Hun, 585; *Sandford* v. *Sandford*, 40 Hun, 540; *First Nat. Bank* v. *Fitzpatrick*, 80 Hun, 75; *Mayer* v. *Noll*, 56 How. Pr. 214; *Ex parte Wallis*, 6 Cow. 581; *Bradbury* v. *Bliss*, 23 App. Div. 607; *Matter of Siebert*, 30 Misc. Rep. 680; *How land* v. *Ralph*, 3 Johns. 20.) Even if it be held that the direction to appear on August eighth contained in the order

of July twenty-seventh was incidental to the punishment
inflicted for the disobedience of the subpœna and such order
was properly served on the attorney, still petitioner was illegally punished and was entitled to be discharged. (*Armstrong* v. *Craig*, 18 Barb. 390 ; *McCauley* v. *Palmer*, 40 Hun,
38.)  The appearance by Mr. Fish being unauthorized and
he being insolvent, service upon him was a nullity and the
imprisonment unlawful. (*Denton* v. *Noyes*, 6 Johns. 297 ;
*Vilas* v. *P. & M. R. R. Co.*, 123 N. Y. 457 ; *Sperry* v. *Reynolds*, 65 N. Y. 183 ; *O'Donoghue* v. *Boies*, 159 N. Y. 99.)
Carrie Bell Depue being a witness and not a party, her appearance could not be compelled by order. (*People ex rel. Grant*
v. *Warner*, 51 Hun, 53 ; *Wood* v. *Keal*, 3 Abb. [N. C.] 122.)
The failure of petitioner to appear not being willful, no contempt was committed, and the imprisonment was illegal. (*Matter of Elias*, 40 App. Div. 632.)

*T. B. Merchant* and *L. M. Merchant* for respondents.
The service of a second subpœna upon appellant, requiring
her appearance on August 8, 1901, and subsequent times was
not necessary. (*Pitt* v. *Davison*, 37 N. Y. 235 ; *Zimmerman* v. *Zimmerman*, 14 N. Y. Supp. 444 ; *Rochester Lamp
Co.* v. *Brigham*, 1 App. Div. 490 ; *Parker* v. *Hunt*, 15 Abb.
Pr. 410.)  The court had jurisdiction over the appellant to
grant the order of January 2, 1902. (*Pitt* v. *Davison*, 37
N. Y. 245 ; *Zimmerman* v. *Zimmerman*, 14 N. Y. Supp.
444 ; *Mahon* v. *Mahon*, 5 Civ. Pro. Rep. 58 ; *Isaacs* v.
*Calder*, 42 App. Div. 152 ; *Hart* v. *Johnson*, 43 Hun, 505 ;
*Keller* v. *Keller*, 100 App. Div. 325 ; *Lederer* v. *Lederer*, 47
Misc. Rep. 471 ; *Brown* v. *Nichols*, 42 N. Y. 26.)  Attorney
Fish had authority to appear for appellant in these proceedings. (*Brown* v. *Nichols*, 42 N. Y. 26 ; *Vilas* v. *P. & M.
R. R. Co.*, 123 N. Y. 440 ; *Hamilton* v. *Wright*, 37 N. Y.
502.)  In the habeas corpus proceedings for discharge of
appellant from custody under the order adjudging her guilty
of contempt, the court had no authority to set aside such
order, and the exorbitance, unjustness or illegality of the con-

tempt fine could not be reviewed. (*People ex rel. Woolf* v. *Jacobs*, 66 N. Y. 8; *People ex rel. Post* v. *Grant*, 13 Civ. Pro. Rep. 305; *People ex rel. Schneider* v. *Hayes*, 108 App. Div. 6.) The appellant having actual notice of the order requiring her to appear before the referee, personal service was unnecessary. (*People ex rel. Stearns* v. *Marr*, 181 N. Y. 463; *Davis* v. *Davis*, 83 Hun, 500.)

O'Brien, J. The order from which this appeal is taken was made upon the hearing of a writ of habeas corpus procured by the relator, Mrs. Depue, to procure her discharge from the custody of the sheriff, who held her by virtue of an order of the county judge, wherein it is stated as follows: "And it is further ordered and adjudged that for her said contempt and misconduct in failing to appear before the said Referee as a witness on behalf of the judgment creditors in such supplementary proceedings on August 8th, 1901, at ten o'clock in the forenoon, or at the time or times to which such proceedings were adjourned for the purpose of her appearance, she is hereby fined the sum of $20.00, the amount of the complainant's costs and expenses in these proceedings, and in addition thereto the sum of $151.00, aggregating the sum of $171.00, which is hereby imposed upon her to be paid by her to the said attorneys for the judgment creditors in such supplementary proceedings, and that said Carrie Bell Depue stand committed to the Broome County Jail until she has complied with the acts required of her and appear for examination, and has given testimony as a witness on behalf of the plaintiffs before Harry C. Walker, Esq., as the Referee in supplementary proceedings instituted herein, at his office, No. 64 Court street, in the City of Binghamton, N. Y., and pay the said fine of $171.00 hereby imposed upon her. Said term of imprisonment not to exceed six (6) months."·

It will be seen that the relator was not committed for disobedience of any subpœna or other process except an order and for failure to appear at adjournments upon the same order. The material part of the order requiring the relator

to appear before the referee was made on the 27th day of
July, 1901, directed her to appear before the referee at his
office "on the 8th day of August, 1901, at ten o'clock in the
forenoon" for examination. The order did not require her
to appear at any other time or any other place. The whole
basis of the proceeding was the relator's failure to appear on
the return day of this order or at the subsequent adjourn-
ments. If she was not guilty of contempt in thus failing to
appear there was no contempt at all.

The hearing on the writ of habeas corpus was before the
same county judge who made all the orders in the case and he
discharged the relator from custody, but the Appellate Divi-
sion reversed his order "on questions of law only." The
learned court below had no power to reverse the county judge
as matter of law unless all the jurisdictional facts were admitted
or conclusively established, and they were not, as will be seen
hereafter.

On the hearing of a writ of habeas corpus all the jurisdic-
tional facts are open for examination and decision by the court
or judge granting the writ. (*People ex rel. Corkran* v. *Hyatt*,
172 N. Y. 176.) This principle was elaborately discussed and
decided in that case, and it was held that while the recitals in
the process under which the relator is held, if sufficient on
their face, are *prima facie* evidence of the facts stated, yet
they may be tried before the judge granting the writ on the
hearing, and if he is not satisfied upon the proofs before him
of the existence of the jurisdictional facts the relator is
entitled to be discharged. In this case the county judge had
power, and it was his duty to determine all the jurisdictional
facts, and he found them in favor of the relator, and if there
was any evidence to support his findings, or any view of the
facts that required or justified him in discharging the relator
from custody, then the learned court below was without
power to disturb his conclusions upon questions of law only,
though of course they had power to review the facts. The
whole case being thus before the county judge on the hearing
of the writ there were ample grounds for his decision in dis-

charging the relator, and I will now proceed to point out these grounds in detail.

1. The proceeding to punish the relator for contempt has no foundation except her failure to obey an order of the county judge to appear and testify before a referee on the 8th day of August, 1901. There was no power to make that order and it was void, and so this court and the Supreme Court have held. The case of *People ex rel. Grant v. Warner* (51 Hun, 53) resembles this in its essential features. It was a proceeding to punish a witness for contempt in refusing to testify in proceedings supplementary to execution, and the court said: "In addition to imposing the fine, the order appealed from contained a provision requiring the appellant to appear at a place and on a day named in said order, to which day and place the proceedings had been adjourned by the referee, and then and there be sworn as a witness for the judgment creditors, and to answer all proper questions relating to the property of the judgment debtor. * * * The provision of the order requiring the appellant to appear before the referee on a future day and to submit to an examination, and on his failure to do so he would be deemed guilty of contempt was also void, for the reason that the proceedings had come to an end, and also because the county judge had no authority to enforce the attendance of witnesses in any case by mere order. The appearance of third persons on behalf of the parties to the proceedings to be examined as witnesses can only be enforced by due service of the process of subpœna as upon the trial of an action." This is the language of the General Term of the Fifth Department, and it was affirmed in this court (125 N. Y. 746) *on the opinion below.* It is clear, therefore, that upon this point alone the county judge should have discharged the relator. But even this void order was never personally served upon her. It was served upon an attorney who assumed to appear for her on the return day. She gave proof on the hearing of the writ of habeas corpus that he was not authorized to appear for her and that she had never seen or heard of the order. Moreover,

this order was made upon an order to show cause, which made no mention of any application for any order requiring her to appear, or anything else, except an application to punish her for contempt.

If the first order that was made punishing the relator for contempt in not appearing in response to the subpœna had contained a provision to the effect that the relator could purge herself from the contempt of which she was convicted by appearing and being sworn on a future day, the case might be very different. Then the order would have the effect of continuing the first contempt proceedings, and she would remain in contempt until she so purged herself. But nothing of that kind was done. The first contempt proceedings were completed upon her conviction and the payment of the fine then imposed, and have no connection whatever with the order requiring her to appear before the referee on the 8th of August. The two things cannot now be so connected as to warrant any proceedings for contempt except those based upon the order to appear and be examined then or on the subsequent adjournments.

2. Passing from that point we come to another which also justified the county judge in releasing the relator from custody. A proceeding to punish for contempt is in itself a special proceeding independent of the action or special proceeding in which it may be taken. (*Erie Railway Co.* v. *Ramsey*, 45 N. Y. 637; *People ex rel. Grant* v. *Warner*, *supra; Moschell* v. *Boor*, 66 Hun, 557.) The rights of the parties and the rules of law are in all respects the same as in actions where the same issues are involved. (*Matter of Chapman*, 162 N. Y. 456; Code Civ. Pro., § 1361; *People ex rel. Baxter* v. *Baxter*, 57 App. Div. 179.) The petition upon which the writ was granted in this case was verified. Among other facts the following were stated :

"(1) That she has never at any time seen or had any communication with A. P. Fish, has never employed him as her attorney and has never authorized anybody to employ him as her attorney nor to appear for or represent her, and that until she

was arrested on May 8th, 1905, she had no knowledge or information of any kind that said Fish had ever assumed to appear or act for or represent your petitioner, and that he is insolvent.

" (2) Your petitioner further shows that the order of July 27, 1901, mentioned in the order under which your petitioner was arrested and is now confined, and a copy of which is hereto attached and made part hereof, was not served upon your petitioner and that she has never had any notice, knowledge or information that such an order was ever granted, made or issued, and that she never had any notice, knowledge or information that she had been directed or required to appear before the referee or any one else on August 8, 1901, at ten o'clock in the forenoon or at any other time.

" (3) That until this date she did not know and had no notice or knowledge that said Fish had appeared for her or assumed to represent your petitioner before said referee on August 8th, 1901, or October 2d, 1901, and that the only subpœna ever served upon your petitioner in this proceeding or in connection therewith was the subpœna served on or about the 15th day of May, 1900, and for the disobedience of which subpœna the county judge of Broome County punished your petitioner by fining her ten dollars, which fine was paid, and that until this date, May 8th, 1905, your petitioner had no knowledge or notice that said proceeding had been adjourned to October 24th, 1901, or any other time, and did not know that she was required to appear on that date.

" (4) Your petitioner further shows that no papers of any kind have been served upon her in this proceeding since July 18, 1901, and that she had no knowledge, notice or information of any kind of the institution of this proceeding to punish her for contempt in failing to obey said order of July 27, 1901."

These were all facts that had a direct bearing on the question of jurisdiction. They were not traversed or denied by the return and, therefore, were admitted upon the record.

In Spelling on Extraordinary Remedies (§§ 1317, 1324) the rule is thus stated : " While, strictly speaking, owing to the summary character of the proceeding, there are no pleadings

in habeas corpus, yet for all practical purposes the petition is treated as the complaint and the return as an answer in an ordinary civil action. * * * With reference to the degree of certainty required in returns it may be stated simply that the ordinary rules are applicable as in civil actions generally." " In a petition for a writ of habeas corpus, verified by the oath of the petitioner, facts duly alleged are ordinarily taken to be true, unless denied by the return or controlled by other evidence." ( *Whitten* v. *Tomlinson*, 160 U. S. 242. See, also, *People ex rel. Van Riper* v. *N. Y. C. Protectory*, 106 N. Y. 604 ; *People ex rel. Baxter* v. *Baxter*, *supra*.)

But if the allegations of the verified petition were not admitted for failure to traverse or deny them, they were certainly evidence for the consideration of the county judge upon the hearing of the writ. They were clearly as strong as an affidavit denying the same facts, and all the evidence at the hearing on the part of the creditor was in the form of affidavits. It was competent for the county judge to accept the statements of the petition as truthful, and if he believed them, as he had the right to and did, it was his duty to release the relator since he found that she was not guilty of any contempt.

3. Proceedings to punish for contempt are purely statutory. The fine imposed upon the relator in this case was the amount of the judgment and costs and it was directed to be paid to the creditor. There was no power to make such an order except in a case where the complaining party cannot maintain an action for damages for the loss or injury sustained by reason of the failure of the offender to obey the process. (Code Civ. Pro., § 2284.) If the relator in this case disobeyed any process issued with jurisdiction the creditor had the right to recover all his damages in an action for that purpose. (Code Civ. Pro., §§ 852, 853, 854.) There being no power to make the order that was made, the county judge on the hearing of the habeas corpus properly discharged the relator from the custody of the sheriff.

4. Where a person is committed for contempt " the par-

ticular circumstances of his offense must be set forth in the mandate of commitment." (Code Civ. Pro, § 11.) There was no attachment, warrant or mandate of any kind issued in this case except the order adjudging her in contempt made more than three years before she was arrested upon it by the sheriff. The order simply adjudged her in contempt for failing to appear as a witness in supplementary proceedings " on August 8th, 1901, at ten o'clock· in the forenoon, *or at the time or times to which such proceedings were adjourned.*" It cannot be asserted with any reason that an order committing a party for contempt on a day named, *or* on other days and times not named, sets forth " the particular circumstances of his offense." The person can never know from such a paper just what offenses he has been convicted·of, and since it is conceded that the order was never served upon the relator personally, and since she swears that she never heard of it, the order was too indefinite to authorize her arrest and incarceration. This court has held that a mandate committing a party for contempt which in its terms was much more definite and specific than the mandate in this case, was insufficient to warrant the arrest of the party charged, and this, although it was made upon personal appearance and a full hearing. (*People ex rel. Barnes* v. *Court of Sessions*, 147 N. Y. 290.)

5. The relator was committed for contempt as we have seen for failing to appear as a witness in response to an order. It has been shown that it was a void order, and being void the adjournments based upon it were without authority. There are, however, some other things in the case that will show what a loose proceeding it was and how little support can be found for it in law or practice. It is assumed without color of reason or authority that a witness, not a party, may appear by attorney and that any order subsequently served on the attorney in contempt proceedings to punish the witness *for not appearing* may be served on the attorney and this service is sufficient to confer jurisdiction to punish the witness for contempt. It is perfectly safe to say that no principle or authority can be found to support such a proposition, and yet

it is one of the fundamental assumptions in this case, since it is based upon the notion that a subpœna or an order to testify may be served, not upon the witness, but on some one claiming to represent him, and then in case there is no appearance the witness can be punished for contempt.

A witness in an action or special proceeding is entitled to be paid mileage and the statutory *per diem.* He cannot be compelled to attend without such payment. (Code Civ. Pro., § 3318.) There is no proof whatever in the record to show that the relator was either paid or tendered mileage or *per diem* upon the order to appear and testify, or upon the subsequent adjournments. In a proceeding to punish a witness for contempt in failing to appear it is incumbent on the complaining party to make out a clear case and certainly incumbent on him to show that he had paid or tendered his legal fees to the witness. All these questions were before the county judge upon the hearing of the writ of habeas corpus. Clearly they were of such a character as to warrant the judge in discharging the relator, and the case presented no question of law that authorized the court below to reverse his order.

The order should be reversed and that of the county judge affirmed, with costs in all courts to the relator.

WERNER, WILLARD BARTLETT and HISCOCK, JJ., concur; CULLEN, Ch. J., HAIGHT and VANN, JJ., concur on ground first stated in opinion.

Ordered accordingly.