Barabash v Castellano (2024 NY Slip Op 50090(U))

[*1]

Barabash v Castellano

2024 NY Slip Op 50090(U)

Decided on January 29, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 29, 2024
Supreme Court, Kings County

Ivan Barabash, Plaintiff,

against
Nicholas Castellano, Triangle Excavators of New York, LLC, Defendants.

Index No. 519478/2019

Wingate, Russotti, Shapiro & Halperin, LLP, New York City (Stephen D. Wagner III of counsel), for Plaintiff.
Hammill Croutier Pender Koehler Lawless & Moulton, P.C., Syosset (Richard C. Koehler of counsel), for Defendants.

Aaron D. Maslow, J.

The following numbered papers submitted on the NYSCEF efiling case folder herein were considered:
Doc No. 49: Expert exchange re Dr. Sorin Siegler
Doc No. 54: Expert exchange re Shawn Harrington
Doc No. 56: Defendants' rejection of expert exchange re Shawn Harrington
Doc No. 59: Subpoena to Nicholas Castellano
Doc No. 70: Subpoena to Benedetto Marra
Doc No. 73: Plaintiff's cover letter to supplemental expert change re Shawn Harrington
Doc No. 74: Supplemental expert change re Shawn Harrington
Doc No. 77: Notice of motion to quash subpoena to Benedetto Marra
Doc No. 78: Affirmation in support of motion to quash subpoena to Benedetto Marra
Doc No. 79: Affidavit of service of motion to quash subpoena to Benedetto Marra
Doc No. 83: Affirmation in opposition to motion to quash subpoena to Benedetto Marra
Doc No. 84: Secretary of State information
Doc No. 85: Affidavit of service of opposition to motion to quash subpoena to Benedetto Marra
Doc No. 86: Plaintiff's trial witness list
Doc No. 90: Motion in limine to preclude testimony of Shawn Harrington
Doc No. 91: Memorandum of law in support of motion in limine to preclude testimony of Shawn Harrington
Doc No. 92: Subpoena to Dr. Sorin Siegler
Doc No. 93: Affirmation in opposition to motion in limine to preclude testimony of Shawn Harrington
Doc No. 94: Memorandum of law in support of motion in limine to quash subpoena to Dr. Sorin Siegler
Doc No. 95: Motion in limine to compel Dr. Sorin Siegler to testify & in opposition to motion in limine to quash subpoena to Dr. Sorin Siegler
Doc No. 98: counsel correspondence re motion in limine to preclude testimony of Shawn Harrington
Additionally, the Court heard oral argument of counsel on January 24, 2024.
Background
This is an action to recover damages by Plaintiff Ivan Barabash ("Plaintiff") wherein he alleges that he sustained serious injuries proximately resulting from a motor vehicle accident on December 13, 2018, when the vehicle he was operating collided with a dump truck where Leverett Avenue and Abingdon Avenue intersect in Richmond County. The truck was proceeding southbound on Abingdon Avenue, and operated by Defendant Nicholas Castellano ("Defendant Castellano") and owned by Defendant Triangle Excavators of New York LLC. Plaintiff was proceeding westbound on Leverett Avenue. The trial by jury was scheduled to start either on January 24 or 25, 2024, but jury selection has taken longer than expected. The liability phase of the trial is now scheduled to start on January 29, 2024.
Before the Court are motions in limine concerning witness testimony by three persons at the liability phase of the trial. This decision and order determines them.
Dr. Sorin Siegler, Ph.D.
Dr. Sorin Siegler is a biomechanical engineer with a Ph.D. from Drexel University, whom Defendants identified as an expert witness they intend to call should the trial extend into the damages phase. Per Defendants' expert disclosure, Dr. Siegler reviewed the police accident report, the bill of particulars, EBT transcripts, and numerous medical records. If called, he would testify that the collision was a low-impact one within the limits of human tolerance and comparable to accelerations experienced during normal everyday activities; that there was no causal link between the accident and claimed cervical spine pathologies. (See NYSCEF Doc No. 49.)
Plaintiff purportedly subpoenaed Dr. Siegler to testify as his witness during the liability phase of the trial. Service took place via filing the subpoena on NYSCEF, directed to the attention of Defendants' counsel. This took place on January 22, 2024. The subpoena was returnable January 24, 2024. Defendants have made a motion in limine to quash the subpoena issued to Dr. Siegler. They allege that it was not properly served; that service via NYSCEF to the attention of Defendants' counsel did not properly effectuate service. Dr. Siegler is not a party to this litigation and, hence, he could not be served in the aforementioned manner, maintained Defendants. (See NYSCEF Doc No. 94.) Plaintiff made a motion in limine to compel Dr. Siegler's testimony (see NYSCEF Doc No. 95).
It is also claimed by Defendants that Dr. Siegler resides in Florida and so a subpoena on him would not be effective pursuant to Judiciary Law § 2-b (1) (court of record has power to issue a subpoena requiring attendance of a person found in the state); that the subpoena is ineffective because it omits information pertaining to the testimony sought; and that any issue as to speed of a vehicle would not be beyond the ordinary ken of the jurors. Defendants also posit that Dr. Siegler cannot be compelled to testify for Plaintiff.
Plaintiff, fearing that Defendants will offer testimony that Plaintiff was speeding, desire that Dr. Siegler testify since his report indicated that this was a low-speed collision.
CPLR 2303 (a) provides that "A subpoena requiring attendance or a subpoena duces tecum shall be served in the same manner as a summons. . . ." A natural person is to be served with a summons by means of the methods set forth in CPLR 308. Service via NYSCEF does not comport with CPLR 308. CPLR 2303-a does provide: "Where the attendance at trial of a party or person within the party's control can be compelled by a trial subpoena, that subpoena may be served by delivery in accordance with subdivision (b) of rule 2103 to the party's attorney of record."
This Court finds that Dr. Siegler is an independent expert retained by Defendants. He is not under their control and, therefore, Defendants may not be compelled to produce him. Service on Defendants' attorneys via NYSCEF constituted ineffectual service (see CPLR 2303-a).
In Gyani v Great Neck Med. Ctr. (35 Misc 3d 278 [Sup Ct, Nassau County 2012]), the court held that a physician who was a named defendant could be subpoenaed by serving the attorney for the co-defendant hospital because the physician had been an employee of the hospital at the time of the alleged malpractice. The physician lived in New Jersey. This decision is not applicable because Dr. Siegler was and is not an employee of Defendants and neither is he a named defendant. Therefore, Gyani is inapplicable to the facts here.
Moreover, as argued by Defendants' counsel during oral argument on January 24, 2024, Plaintiff did not tender an attendance fee and travel expenses to Dr. Siegler. (Plaintiff's counsel never stated that the payments were made when this was brought out in oral argument.) This alone warrants the quashing of the subpoena (see Matter of Depue, 185 NY 60 [1906] [in proceeding to punish witness for contempt in failing to appear it is incumbent on complaining party to show, not only that the witness had been served with process, but that she had been paid or tendered her legal fees and mileage]; Jaggars v Scholeno, 6 AD3d 1130 [4th Dept 2004] [witness may not be punished for disobeying subpoena where witness fees not tendered with subpoena or before it is returnable]; Bobrowsky v Bozzuti, 98 AD2d 700 [2d Dept 1983] [contempt judgment entered in supplementary proceeding to enforce money judgment void where subpoena unaccompanied by witness fee]).
Can an expert retained by a party be subpoenaed to testify at trial on behalf of an opposing party? The more modern rule in New York is yes with respect to medical evidence or an employee. In Gilly v City of New York, 69 NY2d 509, 510 [1987], the Court of Appeals wrote, "The substance of a report prepared by a physician employed by defendant to examine plaintiff, and furnished to her, can be elicited by plaintiff as part of her direct case." The Court referred to McDermott v Manhattan Eye, Ear & Throat Hosp. (15 NY2d 20 [1964]), where it was held that a physician-defendant could be called as an expert witness by the plaintiff in a medical malpractice action. The Gilly decision stated that on retrial, the physician who examined the plaintiff at the behest of the defendant should not be barred from relating the substance of his report when called as a plaintiff's witness, as "Permitting such evidence furthers truth-seeking objectives without engendering the concerns [of a witness providing exert opinion testimony involuntarily]" (Gilly v City of New York, 69 NY2d at 511). The decision noted that the physician voluntarily involved himself in the case when he undertook to examine the plaintiff and report his findings; and, all he would be doing on the stand would be relating the opinion he formed as detailed in his written report. "Once a physician's report has been reduced [*2]to writing and served on the adversary, it ceases to be for the exclusive use of defendant. At that point both sides have access to this probative evidence and there is no basis for withholding it from the trier of fact." (id. at 512.)
Gilly has been applied by the Second Department (e.g. Troyano v Burris, 196 AD3d 525 [2d Dept 2021] [video of defendants' IME doctor's pre-trial testimony may be played by plaintiff]; Hughes v Webb, 40 AD3d 1035 [2d Dept 2007] [improvident exercise of discretion for Supreme Court to deny plaintiff's application for brief continuance of trial in order to compel testimony of the defendant's examining doctor as fact witness, where plaintiff had properly subpoenaed the witness and witness failed to appear as directed]; Zysk v Bley, 24 AD3d 757 [2d Dept 2005] [plaintiff correctly contended that she should be given opportunity to call defendant's examining physician as fact witness if she so chooses]; Bevilacqua v Gilbert, 143 AD2d 213 [2d Dept 1988] [negligence plaintiffs could call physician who examined them at defendant's request, formulated findings, and conveyed those findings to parties, to testify as to contents of his report]; Decker v Rassaert, 131 AD2d 626 [2d Dept 1987] [upon retrial, plaintiffs may be permitted, if so advised, to call as a witness psychiatrist retained by defendant to examine plaintiff and who issued report apparently supporting plaintiff's claims, but testimony to be limited to findings and conclusions fully disclosed in his report concerning claims]; accord Gyani v Great Neck Med. Group, 35 Misc 3d 278 [defendant and employee of co-defendant hospital at time of alleged malpractice may be compelled to testify].
Does Gilly extend to experts who are not physicians? This Court notes that in People ex rel. Kraushaar Bros. & Co. v Thorpe (296 NY 223, 225 [1947]), the Court of Appeals articulated, "We think the better is not to compel a witness to give his opinion as an expert against his will." The case was described by the Court: "In this tax certiorari proceeding relator subpoenaed an involuntary expert witness who previously had prepared an appraisal of the property in suit for a prior owner. At the trial relator sought to elicit the witness's opinion as to the value of the premises but the witness declined to accept a fee and refused to testify, stating that he did not wish to take part in the case. The trial court ruled, over relator's objection, that, while the witness was required to testify with regard to what he had seen on the premises, he had a right to refuse to answer any question connected with his experience and judgment as a real estate expert and not as an ordinary lay witness. We find no error in this ruling." (People ex rel. Kraushaar Bros. & Co. v Thorpe, 296 NY at 224.) McDermott v Manhattan Eye, Ear & Throat Hosp., cited supra at 4, distinguished People ex rel. Kraushaar Bros. & Co. v Thorpe on the basis that the latter involved an expert who was not a party to the action. Gilly referenced how the McDermott decision distinguished Kraushaar. Therefore, Kraushaar has not been overruled by Gilly and remains good law.
In fact, Kraushaar was cited more recently in Metropolitan NY Coordinating Council on Jewish Poverty v FGP Bush Terminal (1 AD3d 168, 168 [1st Dept 2003]), which also cited Gilly with a "see also," for the following holding: "The court properly quashed plaintiff's subpoena to require the testimony of an expert retained by the defense since involuntary expert opinion testimony may not ordinarily be compelled, and there were no circumstances upon which an exception to this rule might have been premised [citations omitted]." The expert was an appraiser.
The Second Department, in the decision in Morgan v New York City Tr. Auth. (24 AD3d 639 [2d Dept 2005]), held, "The Supreme Court properly denied the plaintiffs' request to compel the defendant's expert to testify at the trial, even though the expert had been subpoenaed by the [*3]plaintiffs," while citing to CPLR 2308 (a), Metropolitan NY Coordinating Council on Jewish Poverty, and Kraushaar.
To the extent that Kraushaar and Gilly are in conflict, they must be reconciled. This Court does so by noting that Gilly bootstrapped onto McDermott, and the latter involved an expert who was also a defendant. Gilly noted that the doctor in McDermott who was compelled to testify for the plaintiff "was already connected to the case" (Gilly v City of New York, 69 NY2d at 511). Further, in Gilly itself, "Here we conclude that a physician in the position of Dr. Edson, who has examined the plaintiff, formulated his findings and had them conveyed to both parties in litigation, should not be barred from relating the substance of his report when called as a witness by plaintiff" (id. at 512 [emphasis added]).
This Court holds that Gilly should be limited to situations where a plaintiff seeks to call as a witness a medical professional retained by a defendant or who treated plaintiff, or who is a party. This is borne out by the various cases citing Gilly — they involved calling a physician or other medical professional as a witness (see supra at 4-5).[FN1]

The distinction between examining physicians and non-medical experts was implied in State v Jesus H. (77 Misc 3d 1211[A], 2022 NY Slip Op 51187[U] [Sup Ct, NY County 2022]), where the court noted that Metropolitan Coordinating Council on Jewish Poverty v FGP Bush Terminal "involved allegations that the plaintiff had suffered property damage from a flood," whereas Gilly was a medical malpractice case in which the subpoenaed expert was a medical witness "who had already examined the plaintiff" (2022 NY Slip Op 51187[U], *12) [emphasis in original]).
Dr. Siegler is a biomechanical expert. He did not examine Plaintiff herein. He did not treat Plaintiff, and neither is he a party to this action. He does not fit into any of those categories. He is merely a professional retained by Defendants to review an accident and opine on his assessment as to what transpired and what impact this had on Plaintiff. As such, he may not be involuntarily called by Plaintiff (see People ex rel. Kraushaar Bros. & Co. v Thorpe, 296 NY 223, 225; Metropolitan NY Coordinating Council on Jewish Poverty v FGP Bush Terminal, 1 AD3d 168).
The subpoena purporting to be served on Dr. Siegler via service on Defendants' counsel via NYSCEF is hereby quashed for the foregoing reasons.
Benedetto Marra
Benedetto Marra was the principal of Defendant Triangle Excavators of New York, LLC, which is no longer an active company. Plaintiff served a subpoena to compel his attendance at trial on January 10, 2024; like with Dr. Siegler, it was filed on NYSCEF, directed to the attention of Defendants' counsel. Defendants have moved to quash it. Defendants argue that Mr. Marra resides in Florida and thus there could be no jurisdiction obtained over him via a subpoena to defense counsel, as per Judiciary Law § 2-b (1).
Unlike Dr. Siegler, Mr. Marra is significantly connected to a party — he was the principal of Defendant Triangle Excavators of New York, LLC. This Court adopts the reasoning of Gyani v Great Neck Med. Group, 35 Misc 3d 278, cited supra at 3, which held that a defendant and [*4]employee of a co-defendant hospital at the time of alleged malpractice, residing out of state at the time of trial, may be compelled to testify through issuance of a subpoena to New York defense counsel. Thus, Mr. Marra would be subject to the subpoena but for two further matters.
First, like with Dr. Siegler, there is no evidence submitted that he was paid a witness fee and travel expenses. Therefore, he need not testify for Plaintiff (see Matter of Depue, 185 NY 60; Jaggars v Scholeno, 6 AD3d 1130; Bobrowsky v Bozzuti, 98 AD2d 700).
Second, this Court finds that Plaintiff has offered an improper reason for subpoenaing Mr. Marra. Plaintiff claims that his testimony is relevant on at least 17 matters, as listed in NYSCEF Doc No. 83 at ¶ 19. Plaintiff seeks information concerning the dump truck owned by Triangle Excavators of New York, LLC which collided with Plaintiff's vehicle: weight, dimensions, load size, maintenance records, repair records, electronic logging system, pre- and post-trip inspection sheets, pre-trip log, post-trip log, and dash camera video system. Other information sought from Mr. Marra includes the disciplinary record of Defendant Castellano and his training and supervisory history.
This Court agrees with Defendants that the purpose for issuance of the subpoena to Mr. Marra is improper. The foregoing information could have been obtained during the discovery process. "On this record, the inexorable conclusion is that the purpose of the subpoena duces tecum was to obtain otherwise unavailable discovery" (Matter of Terry D, 81 NY2d 1042, 1044 [1993]). The Court held: "Respondent, however, cannot use the procedural mechanism of a subpoena duces tecum to expand the discovery available under existing law (see People v Gissendanner, 48 NY2d at 551). Yet in view of his motion papers it is evident that this is precisely what respondent sought to do. Thus, Family Court abused its discretion in denying appellants' motion to quash." (Id. at 1045.)
"Supreme Court did not abuse its discretion in quashing the subpoenas 'where, as here, plaintiff improperly utilized the overbroad trial subpoenas as a discovery device and a fishing expedition to secure from defendant [s] . . . wide-ranging discovery that plaintiff's counsel had neglected to obtain in pretrial disclosure' (Mestel & Co. v Smythe Masterson & Judd, 215 AD2d 329, 329-330 [1st Dept 1995]; see Humphrey v Kulbaski, 78 AD3d 786, 787-788 [2d Dept 2010] [quashing as overbroad subpoena requesting 'all . . . files and records' pertaining to plaintiff's treatment without narrowing request to subject of the litigation]; Matter of Terry D., 81 NY2d 1042, 1044 [1993])." (Tribeca Space Mgrs., Inc. v Tribeca Mews Ltd., 200 AD3d 626, 629 [1st Dept 2021].)
"Supreme Court providently exercised its discretion in quashing the subpoenas, as defendants established that plaintiff was improperly using them to secure discovery after the note of issue had been filed (see Bour v 259 Bleecker LLC, 104 AD3d 454, 455 [1st Dept 2013]; see Matter of Terry D., 81 NY2d 1042, 1044-1045 [1993]; see also Tribeca Space Mgrs., Inc. v Tribeca Mews Ltd., 200 AD3d 626, 629 [1st Dept 2021])" (Feiner & Lavy v Zohar, 210 AD3d 408 [1st Dept 2022]).
Moreover, at oral argument, Plaintiff argued that Mr. Marra's testimony regarding disciplinary procedures could establish that Defendant Castellano was fearful of being fired, which in turn would have led him to exaggerate Plaintiff's rate of speed to the police, who in turn wrote a report with this information. This Court finds this proffered ground for issuance of a subpoena to be extremely speculative and collateral to the issue of what the speeds were of the colliding vehicles.
Accordingly, this Court quashes the subpoena directed to Benedetto Marra due to [*5]improper service and improper grounds for its issuance.
Shawn Harrington
Shawn Harrington is a traffic accident reconstruction expert whom Plaintiff desires to call as a witness. Defendant opposes this and has made a motion in limine to preclude Mr. Harrington's testimony.
Plaintiff has offered the following disclosure of the subject matter of Mr. Harrington's proposed testimony:
The subject matter about which Mr. Harrington may testify concerns accident / incident reconstruction. Mr. Harrington's testimony with respect to Plaintiff's incident would be based upon review of relevant file materials, including but not limited to, statements and records of all parties, documents obtained through discovery and investigation, pleadings, documents and photographs exchanged, the police incident report, the deposition testimony of all parties, Plaintiff's experts' testimonies including that Paul Ivancic, Ph.D, Defendant's expert reports including that of Sorin Siegler, Ph.D., any trial testimony of the parties and the Defendants' experts as well as any hypothetical questions posed to him, and upon the testimony (actual or anticipated) and/or narratives of any other expert retained by any party in this action, in addition to any and all evidence produced during trial.
Mr. Harrington may testify reading relevant scientific terminology, his analysis of the subject incident, general principals of physics used in his analysis, including but not limited to the concept of conservation of momentum, coefficient of restitution, changes in velocity and the way they are computed. He is further expected to testify to a reasonable degree of accident reconstruction and scientific certainty that Defendants caused the subject vehicular crash of December 13, 2018.
Mr. Harrington may testify that the plaintiff perceived the Defendants' vehicle before the impact and applied the brakes. Mr. Harrington may testify that the Defendant driver caused the incident after disobeying a stop sign and/or failing to yield the right of way to the plaintiff, who did not have a traffic control device at the subject intersection. He may further testify the Defendant driver's testimony, including the allegation the plaintiff was speeding immediately prior to and at the time of the impact, is inconsistent with physical evidence in the subject case including, but not limited to, the photographs of the vehicle damage taken at the scene of the incident exchanged by the parties during litigation.
Mr. Harrington may testify that the damage profile of the vehicles is inconsistent with the defendant Driver's deposition testimony and/or anticipated or actual trial testimony that the plaintiff was travelling at 50-60 miles per hour at the time of the subject incident and that the plaintiff failed to engage the brakes / failed to slow down immediately before the impact. Mr. Harrington may testify that the damage profile of the vehicles is consistent with the plaintiff's deposition testimony and/or anticipated or actual trial testimony.
Mr. Harrington may testify that the basis of the Defendants' own biomechanical engineer and incident reconstructionist's opinions are inconsistent with the Defendant driver's deposition testimony and/or anticipated or actual trial testimony. To wit, he may testify that Dr. Siegler's opinion that the Delta-V and the average acceleration experienced by Ivan Barabash were less than 9.4 miles per hour and less than 4.3g, respectively, is inconsistent with the Defendant driver's testimony that Mr. Barabash was traveling at a high rate of speed, did not apply his brakes, and did not take reasonable measures to [*6]avoid the subject crash.
Mr. Harrington may testify that the ultimate conclusions expressed in the aforementioned Defendants' expert report(s) or testimony are logically flawed, not in accord with standard, accepted engineering and accident reconstruction methodology, and are without a sound engineering, scientific and accident reconstruction basis.
Mr. Harrington would testify that the physical evidence at the scene of the subject incident supports the version of events that Mr. Barabash testified to at his deposition and is anticipated to testify to at trial. Mr. Harrington would further testify that Mr. Barabash was not speeding at the time of the incident.
Mr. Harrington's testimony may be further based on a Forensic Rock site inspection(s), an inspection of exemplar vehicle(s) including a Honda Odyssey, and a review of publicly available crash test data.
(NYSCEF Doc No. 54 at 3-5.)
Defendants' motion to preclude Mr. Harrington's testimony seeks:
a. To entirely preclude the testimony of plaintiff's accident reconstruction expert, Shawn Harrington, since the introduction of testimony from this expert is not necessary and is not beyond the ordinary ken of a juror to be able to determine the liability of the parties in this motor vehicle accident.
b. To preclude Shawn Harrington from testifying as to his conclusions with respect to negligence and proximate cause as such testimony and the conclusions are reserved for determination by a trier of fact;
c. To the extent that any of Shawn Harrington's testimony is not precluded, to limit the scope of his testimony only to issues that are beyond the ken of an ordinary juror to understand and therefore call for professional or technical knowledge to clarify.
(NYSCEF Doc No. 90 at 1.)
Defendants emphasize that the subject accident was "a simple two-vehicle motor vehicle accident" concerning which there is no need for professional or technical knowledge beyond the understanding of a jury (NYSCEF Doc No. 91 at 3). The primary evidence would be the two drivers' testimony and photos of the scene and of the vehicles. Since the jury's responsibility is to determine whether a party was negligent and whether any negligence was a substantial factor, i.e., a proximate cause, Mr. Harrington should not be permitted to offer his opinion on them, argued Defendants. (See NYSCEF Doc No. 91 at 2-8.)
Plaintiff argued that "accident reconstruction expertise is outside the province of the jury, is not speculative and directly relevant to the issue of comparative negligence which the defendants have not waived, includes mathematical calculations that the defendants' own expert witness will use and rely on to opine contrary to the plaintiff's interests, and the defendants are not prejudiced" (NYSCEF Doc No. 93 at 1). Plaintiff criticized Defendant for relying on older case law or case law which does not concern motor vehicle accidents. At oral argument and in his written opposition, Plaintiff emphasized that Defendant Castellano asserted previously that Plaintiff was traveling at a high rate of speed. Mr. Harrington would prove that this was not accurate, claimed Plaintiff. (See id. at 2, 4.)
In researching the issue posed by the motion in limine regarding Shawn Harrington, this Court focused on Appellate Division, Second Department decisions involving accidents with trucks, the Court being unable to locate Court of Appeals precedent directly on point.
In the context of a motor vehicle accident, the rule regarding expert testimony was [*7]recently set forth in Kohler v Barker (147 AD3d 1037, 1038 [2d Dept 2017]) in the following manner: "The admissibility and scope of expert testimony is a determination within the discretion of the trial court (see Price v New York City Hous. Auth., 92 NY2d 553, 558 [1998]; Doviak v Finkelstein & Partners, LLP, 137 AD3d 843, 847 [2016]; Galasso v 400 Exec. Blvd., LLC, 101 AD3d 677, 678 [2012]). Generally, expert opinion is proper when it would help clarify an issue calling for professional or technical knowledge, possessed by the expert and beyond the ken of the typical juror (see De Long v County of Erie, 60 NY2d 296, 307 [1983]; Matter of Islam v Lee, 115 AD3d 952, 953 [2014])."
In Kohler, the Appellate Division, Second Department held that the trial court did not improvidently exercise its discretion in admitting the testimony of the defendants' expert at the trial on liability; the jury found that the defendant truck driver was negligent but that his negligence was not a substantial factor in causing the respective collision. The Court noted that the expert based his testimony on facts in the record and his own analysis, not speculation. (Kohler v Barker, 147 AD3d at 1038).
In a decision involving a pre-comparative negligence era accident, Sitaris v James Ricciardi & Sons, Inc. (154 AD2d 451 [2d Dept 1989]), the Court sustained the defendants' calling an accident reconstruction expert to testify. The defendants' tractor trailer truck, weighing 72,000 pounds, hit the plaintiff's station wagon from behind. The expert testified "that a truck weighing 72,000 pounds would have caused more damage to the rear end of the injured plaintiff's station wagon if it actually had overtaken the station wagon in the manner explained by the injured plaintiff. He also opined that based on his knowledge of other accidents and what he viewed at the accident scene, the injured plaintiff had made a sharp turn crossing the path of the truck. The latter opinion corroborated the defendant driver's recollection of the accident." (Id. at 451-452.) Plaintiff's case was dismissed as the jury found comparative negligence on the plaintiff's part. The Court's reasoning for sustaining the expert's testifying was stated as follows:
Because Feliciano's opinions went beyond the experience or knowledge of an ordinary jury, he did not usurp the fact-finding function of the jury. It is well established that in cases where conclusions to be drawn from the facts stated, as well as the knowledge of the facts themselves, depend on knowledge not within the range of ordinary training or experience, an expert may testify "not only to the facts, but the conclusions to which they lead" (Dougherty v Milliken, 163 NY 527, 533; People v Allweiss, 48 NY2d 40; Richardson, Evidence § 367 [Prince 10th ed]). Furthermore, "[f]or testimony regarding both the ultimate questions and those of lesser significance, admissibility turns on whether, given the nature of the subject, the facts cannot be stated or described to the jury in such a manner as to enable them to form an accurate judgment thereon, and no better evidence than such opinions is attainable' " (People v Cronin, 60 NY2d 430, 432-433; see also, Federal Rules of Evidence, rule 704; see also, DeLong v County of Erie, 60 NY2d 296, 307; Selkowitz v County of Nassau, 45 NY2d 97). At bar, although the jury may have been familiar with dents caused by accidents, it is highly improbable that after viewing the photographs admitted into evidence that they would be able to make a calculated determination regarding the extent of the damage that would be caused by a collision of a loaded tractor trailer truck weighing 72,000 pounds, on an ordinary vehicle (see generally, DeLong v County of Erie, 60 NY2d 296, supra; People v Cronin, 60 NY2d 430, supra).
(Id. at 452 [emphasis added].) This Court finds it significant that the Appellate Division [*8]emphasized that a jury would probably not be familiar with the extent of damage caused by a collision with a truck. Defendant Castellano was driving a dump truck.
In a case where the plaintiff's vehicle struck the rear of a parked construction vehicle owned by the defendant, the trial court "properly precluded the plaintiff's expert from testifying regarding whether the defendant's conduct was a substantial contributing factor in the happening of the accident. When the issue which is the subject of the expert's testimony does not exceed the scope of common knowledge, it is properly a matter for determination by the jury (see Leonick v City of New York, 120 AD2d 573)." (Dilillo v B. Reitman Blacktop, Inc., 299 AD2d 517 [2d Dept 2002].)
In another decision where the Court held that an expert should not have been permitted to testify, Dovberg v Laubach (154 AD3d 810 [2d Dept 2017]), it was noted that the biomechanical engineer was improperly allowed to testify for the defense. Plaintiff was the driver of the second vehicle of four involved in the accident. She was propelled from a rear hit into a tow truck. The expert testified that the force generated by the subject accident could not have caused the plaintiff's knee injuries. The Second Department determined that there was an insufficient foundation for the expert's testimony:
The expert disclosure notice simply stated that Bowles analyzed "the medical and engineering aspects of the accident." While the defendants cited to three works in opposition to the motion in limine, they did not identify the authors, years of publication, and contents of those works, or any explanation as to their relevance in evaluating the cause of knee injuries. Moreover, the defendants provided no description of the methodology Bowles utilized to determine the force of the accident, and the biomechanical engineering principles he relied upon in reaching his conclusion that the force generated by the accident could not have caused the plaintiff's knees to come into contact with the vehicle dashboard. Under these circumstances, the Supreme Court should have granted the plaintiff's motion to the extent of precluding Bowles from offering his opinion testimony that the force generated by the accident could not have caused the plaintiff's knee injuries (see Saulpaugh v Krafte, 5 AD3d 934 [2004]; cf.Valentine v Grossman, 283 AD2d 571 [2001]).
(Id. at 813-814.)
This Court also finds relevant the following case law:
• "While controversy about opinion testimony going to the ultimate questions has brewed elsewhere,[ ] in this State the test has been different. For testimony regarding both the ultimate questions and those of lesser significance, admissibility turns on whether, given the nature of the subject, "the facts cannot be stated or described to the jury in such a manner as to enable them to form an accurate judgment thereon, and no better evidence than such opinions is attainable." (Van Wycklen v City of Brooklyn, 118 NY 424, 429; Noah v Bowery Sav. Bank, 225 NY 284, 292.)
"The admissibility and bounds of expert testimony are addressed primarily to the sound discretion of the trial court, and review beyond the intermediate appellate level is generally unwarranted." (People v Cronin, 60 NY2d 430, 432-433 [1983].)
• "The admission of expert opinion evidence is a matter which rests within the discretion of the Trial Judge. Generally, an 'expert' should be permitted to offer an opinion on an issue which involves ' "professional or scientific knowledge or skill not within the range of ordinary training or intelligence" '(Selkowitz v County of Nassau, 45 NY2d 97, 102, [*9]quoting Dougherty v Milliken, 163 NY 527, 533). The test is one of need as applied to the unique circumstances of each case. If the jury requires the benefit of the expert's specialized knowledge, the expert's opinion should be allowed even when it bears on an ultimate question (Fisch, New York Evidence § 413, at 264 [2d ed])." (Dufel v Green, 84 NY2d 795, 797-798 [1995].)
• "[W]here the defendant's expert was permitted to testify on the ultimate issue as to whether or not the defendant was negligent, and the expert's testimony did not exceed the scope of common knowledge, the admission of such proof constituted reversible error" (Berger v Tarry Fuel Oil Co., 32 AD3d 409, 409 [2d Dept 2006]).
Based on the foregoing review of case law, this Court's review of the filed papers, and counsel's oral argument, it is evident that Plaintiff seeks to offer the expert testimony of Shawn Harrington primarily for the purpose of disputing the claim of Defendant Castellano given previously that Plaintiff was speeding. In the event that such testimony is offered at the liability trial, it would be appropriate for an expert to opine otherwise. It might not be within the ken of the jury to assess the speed of vehicles in a collision when one of them is a truck. Likewise, other factors as to how the accident occurred might not be within the ken of the jury, considering that a truck was involved. A jury is more likely to be familiar with adjudging a collision when the vehicles are automobiles, not trucks. This Court considers the Sitaris decision to be quite probative on the issue presented regarding Mr. Harrington; Kohler v Barker (147 AD3d 1037) also provides support for admitting expert testimony when a truck is involved.
This Court finds, however, that it is premature at this point in time, to assess whether Mr. Harrington's testimony should be admitted. There may be sufficient testimony from Plaintiff and Defendant Castellano regarding how the accident occurred — facts falling within the nomenclature of "lesser significance," as opposed to the ultimate issues (see People v Cronin, 60 NY2d at 432) — such that Mr. Harrington's testimony is not necessary for the jury's benefit. On the other hand, it is possible that the testimony of Plaintiff and Defendant Castellano will be insufficient on the subject of how the accident occurred such that Mr. Harrington's testimony would prove useful for the jury to hear and consider.
In any event, should Mr. Harrington opine on how the accident occurred, once his testimony in that regard is given, the ultimate determination of who was or was not negligent and whether any negligence was a substantial factor in causing the accident would be within the ken of the jury. Hence, Mr. Harrington should not be permitted to provide his opinion on those ultimate questions. With sufficient facts before them, no professional or scientific knowledge or skill would be necessary for the jury to determine these ultimate questions because then the ability to answer them would be within the range of the jury's ordinary training and intelligence. (See Berger v Tarry Fuel Oil Co., 32 AD3d 409.) This Court finds that the facts can be stated or described to the jury by the drivers involved — or if necessary, by Mr. Harrington — in such a manner as to enable them to form an accurate judgment thereon on the ultimate issues of negligence and substantial factor (proximate causation) without Mr. Harrington opining on said ultimate issues (see People v Cronin, 60 NY2d 430). While it is true that in certain circumstances, the expert may opine on the ultimate issues, negligence and significant factor (proximate causation) lie within the jury's training and intelligence once they are presented with testimony as to how the accident occurred. In that regard, this Court deems such ultimate issues distinct from whether a motor vehicle accident victim sustained a permanent consequential limitation or a significant limitation of the use of a body member, function, organ or system (cf. [*10]Dufel v Green, 84 NY2d 795).
Further, any expert testimony of Mr. Harrington would have to be based on a sufficient foundation. This Court finds that it has been presented with evidence that the basis of his anticipated testimony as to how the accident occurred is sufficient (see NYSCEF Doc Nos. 54, 74; cf. Dovberg v Laubach, 154 AD3d 810).
Accordingly, any final determination by this Court on whether to permit Shawn Harrington to testify depends on the evidence adduced from the testimony of Plaintiff and Defendant Castellano. This Court is of the opinion that in assessing the issue of his testimony, it has fulfilled its responsibility to properly exercise its trial court discretion, as required by the case law.
Conclusion
Neither of the subpoenas issued to Dr. Sorin Siegler nor Benedetto Marra are enforceable, and Defendants' motions to quash them are GRANTED. Plaintiff's motion in limine to compel Dr. Siegler's testimony is DENIED. Following the testimony of Plaintiff and Defendant Castellano, the Court will determine whether to permit Shawn Harrington to offer expert opinion testimony on how the accident occurred.
THE FOREGOING CONSTITUTES THE DECISION AND ORDER OF THIS COURT.
Dated: January 29, 2024
HON. AARON D. MASLOW
Justice of the Supreme Court of the State of New York

Footnotes

Footnote 1:To the extent Small v Arch Capital Group, Ltd. (2009 NY Slip Op 32571[U] [Sup Ct, NY County 2009] [reinsurance industry expert]) may be read to the contrary, this Court disagrees with it.